## McClean v. New York Press Co., Limited.

(*Supreme Court, General Term, First Department.* June 3, 1892.)

1. LIBEL—ACTIONABLE WORDS—DISORDERLY HOUSE.
   A newspaper article stigmatizing a certain house as a "disorderly house" imputes that the occupants are guilty of a misdemeanor, and is actionable, at the suit of one or all of them.

2. SAME—PRIVILEGE—PUBLIC MORALS.
   It is no defense that such imputation was intended for another house, and is privileged as having been made by mistake, in the performance of a public, moral duty.

Appeal from circuit court, New York county.

. Action by William McClean against the New York Press Company, Limited, to recover damages for defamation of character. From a judgment entered on a verdict for plaintiff, and from an order denying its motion for new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

*Palmer & Boothby*, (*J. W. Boothby*, of counsel,) for appellant. *Sullivan & Cromwell*, (*A. Jaretsky*, of counsel,) for respondent.

. VAN BRUNT, P. J. This was an action for libel. It appears that the defendant was the publisher and proprietor of a newspaper published in the city of New York, and that at the times mentioned in the complaint the plaintiff was and now is the lessee and occupant of No. 234 West Thirty-Ninth street, in the city of New York; and that in May, 1890, the defendant published in its newspaper a map or diagram on which were located and designated certain private houses, public buildings, schools, and churches, including the premises above mentioned, by certain numbers, which numbers were explained in an explanatory note published at the foot of the map, and in said explanatory note the number opposite the plaintiff's house designated his

house, No. 234 West Thirty-Ninth street, "disorderly house," meaning thereby, the complaint alleged, that the premises occupied by the plaintiff were occupied and used as a bawdyhouse or house of prostitution. Immediately after this publication, and down to the time of trial, the plaintiff and his family have been from time to time annoyed by visits from persons supposing that the house in question was a house of ill fame, which had never occurred before the publication. The defense was that at the time of the publication complained of the defendant was engaged in an effort to suppress disorderly houses and other unlawful resorts, and that the designation of the plaintiff's residence was a mistake, and that it was intended to designate No. 238, and not 234; and, further, that the defendants corrected the mistake by publication in a later number of the paper. The case was submitted to the jury, who rendered a verdict in favor of the plaintiff; and from the judgment thereupon entered, and from an order denying a motion for new trial, this appeal is taken.

The grounds urged by the appellant are, first, that the libel was only the libel of a thing, and not of a person, and that, therefore, unless the plaintiff had shown that he had sustained pecuniary loss as the necessary and natural consequences of the publication, he could not recover. It is manifest that this point is not well taken. The phrase used, it is true, is "disorderly house." But a house cannot be disorderly. A house is necessarily staid and sedate. It is only what is in the house that makes it lively or otherwise. Therefore, when a house is spoken of as being disorderly, disreputable, or a bawdyhouse, it refers entirely to the character of the occupants; and it is their character which fixes the character of the thing. When, therefore, a house is spoken of as disorderly or as a bawdyhouse, or as disreputable, it is that the occupants are disorderly, are lewd persons, or are disreputable. It is idle, in a charge of this kind, to talk about it being a libel of the house, where a house is called "disorderly."

It is further urged that the plaintiff did not prove the libel, as charged, referred to him, in that it did not say or infer that the owner or lessee of the house was disorderly, or that such owner or lessee was in any way responsible for the character of the house, and that it appeared that there were other people residing in the house at the time of the publication besides the plaintiff, and that he, therefore, was only one of the people who resided in the house. We are not aware of any rule of law which provides that, where a number of persons are libeled at the same time, they are bound to unite in one action in order to get redress. It may be that the defendant is liable for a similar action to every occupant of the house. But the fact that there were other occupants in no way affected the right of the plaintiff to maintain this action. It appears from the evidence in this case that the plaintiff's name was upon the front door of the house, and that he was the principal occupant thereof, and had been so for many years, and had resided there with his family, and that he was the lessee of the whole house, and therefore was responsible for its character; and, when his house was proclaimed to be a disorderly house, it necessarily implicated him as being guilty of a crime, because every person who occupies a disorderly house is guilty of a misdemeanor. Even if it be the rule that where a class of persons is libeled an action does not lie by an individual of that class without allegation and proof of special damage, such rule has no application whatever to the case at bar. The plaintiff was responsible for the reputation of the house in question, as the lessee, and having control thereof.

It is further urged that the publication complained of was conditionally or qualifiedly privileged, and that in the absence of any proof of actual malice the plaintiff was not entitled to recover, and the complaint should have been dismissed upon defendant's motion. It is claimed that the article shows that in the publication of it the defendant was engaged in an effort to accomplish

a public benefit, and the publication was in the interest of social order and the well-being of society in the city of New York; and a large number of authorities are cited, none of which, however, are applicable to the facts of the case at bar. The rule as adduced seems to be that where a communication is fairly made by a person in the discharge of some private or public duty, legal or moral, which he believes to be true, it is privileged. Therefore the public press may comment fully and freely upon all questions and matters of great public interest, provided they keep themselves within the limits of an honest intention to discharge a public duty. But in the case at bar the publishers of the newspaper did not believe that the house in question was a disorderly house. On the contrary, they say that they had no intention of referring to this house, but to some other house in the neighborhood. It has nowhere been decided, as yet, that where either an individual or a public newspaper, intending to refer to B., makes a slanderous attack upon A., it is a privileged communication. The plea of typographical error does not in any respect alter the situation. It may go to the question of exemplary damages; but, to the right of the plaintiffs to recover, typographical errors form no answer. And this view of the case is strengthened when we consider the fact that as privileged communications are exceptions to the general rule, which implies malice in a libelous publication, it rests with the person claiming the privilege to show that the case comes within the exception. *Byam v. Collins*, 111 N. Y. 143, 19 N. E. Rep. 75. And certainly this is not done by an attempt to show that they believed B. to be a thief, and by mistake made the charge against A.

The further objection that the complaint alleged that the communication amounted to a charge that the plaintiff kept a bawdyhouse, and that the court held that it did amount to that, and admitted evidence to sustain that charge, has no foundation. All that the court did in the trial of the case was to admit evidence of the results of this publication. The article in question charged a misdemeanor, and the words were therefore actionable *per se,* and the plaintiff had clearly the right to prove what resulted from the publication. Neither is there any foundation to the claim that it was error to allow the plaintiff's counsel to recite instances outside of the evidence, tending to prejudice the jury. The only reference in the summing up of the counsel which is contained in the record is a reference to the sad results attending mistakes, and this was a legitimate line of argument to show what would be the result of the claimed mistake made by the defendant in respect to the plaintiff. We think that the judgment and order should be affirmed, with costs. All concur.