## ·*Bank *v.* Bowdre Bros.

### (*Jackson.*     August 7, 1893.)

1. LIBEL.

The defendant in an action of libel or slander cannot, under the general issue, prove the truth of the defamatory matter, either for the purpose of defeating the action or in mitigation of damages. (*Post, pp. 730, 731.*)

Cases cited and approved: McCampbell *v.* Thornburg, 3 Head, 109; Shirley *v.* Keathy, 4 Cold., 29; West *v.* Walker, 2 Swan, 32; Hackett *v.* Brown, 2 Heis., 264.

2. GENERAL ISSUE.

The plea of the general issue in an action of oral or written slander operates as a denial of the speaking of the words or the publication of the libel, and a denial also of the damages in cases where the averment of special damages is necessary to maintain the action. But the plea of the general issue admits that the words were not true. (*Post, p. 731.*)

3. JUSTIFICATION.

The truth of the words charged to have been spoken or published is a conclusive defense to the action, but, in order to be available, must be relied on by a formal plea of justification. (*Post, p. 731.*)

4. INNUENDO. ·

Defendant may plead a justification, and, in the same plea, deny that the words are susceptible of the meaning ascribed to them in the innuendo laid in the declaration. (*Post, pp. 731, 732.*)

5. DAMAGES.

If the words are actionable *per se*, the plaintiff may recover damages without the necessity of showing by evidence that he has sustained any pecuniary loss, for in such case the law presumes damages. If, on the other hand, the words are not actionable in themselves, the plaintiff must not only show the publication of the words, but that it has resulted in special damages to him. (*Post, pp. 734, 735.*)

6. LIBEL PER SE.

Defamatory words falsely spoken or written of a party, which preju-

*Syllabus prepared by Judge McAlister.—REPORTER.

Bank *v.* Bowdre Bros.

dice such person in his profession or trade or business, are actionable in themselves, without proof of special damages.  (*Post, p. 736.*)

7. SAME.

Words which impute a want of credit or responsibility, or suggest a charge of insolvency, spoken of merchants, tradesmen, and others in occupations where credit is essential to successful prosecution, are actionable without proof of special damages.  (*Post, p. 737.*)

8. EVIDENCE.

If the words spoken or written, though plain in themselves, apply equally well to more persons than one, evidence may be given, both of the cause and occasion of the publication and of all the surrounding circumstances affecting the relation between the parties, or of any statement or declaration made by the defendant as to the person referred to.  (*Post, pp. 738, 739.*)

9. PROVINCE OF COURT AND JURY.

Where the language published is unambiguous, it is the exclusive province of the Court to determine its construction and adjudge whether or not, upon its face, it is actionable *per se.*  But on a plea of not guilty, whether the defamatory matter was published concerning any particular individual or firm, is a question of fact for the jury.  (*Post, p. 740.*)

Case cited and approved: Banner Co. *v.* State, 16 Lea, 179.

10. LIBEL PER SE.

The words, "Bowdre in the hands of a Notary," found by the jury to have been written and published concerning the plaintiffs, a mercantile firm, were libelous and actionable *per se.*  (*Post, pp. 738, 739.*)

11. DAMAGES.

Where damages assessed by a jury are so excessive and extravagant as to indicate passion and prejudice, this Court will award a new trial.  (*Post, p. 742.*)

FROM SHELBY.

Appeal in error from Circuit Court of Shelby County.  L. H. ESTES, J.

MORGAN & McFARLAND and ESTES & FENTRESS for Bank.

M. B. TREZEVANT, METCALF & WALKER, and TURLEY & WRIGHT for Bowdre Bros. & Co.

McALISTER, J. This is an action of libel brought by the firm of Bowdre Bros. & Co. in the Circuit Court of Shelby County against the Continental National Bank of Memphis and C. F. M. Niles, its cashier. It appears from the record that on October 16, 1890, Messrs. R. L. Bliss & Co., of Florence, Alabama, drew a sight-draft on Bowdre Bros. for the sum of six hundred and fifty-nine dollars and ninety-five cents. This draft was sent for collection through the First National Bank of Florence, Alabama, to the Continental National Bank at Memphis.

It appears that R. L. Bliss & Co. were customers of Bowdre Bros. & Co., and shipped them large consignments of cotton. At the time this draft was drawn, Bowdre Bros. & Co. had funds in their hands belonging to Bliss & Co., and it was their duty to pay the draft. The Continental National Bank, on the morning of October 16, by its collector, presented the draft at the office of Bowdre Bros. & Co. It appears that neither member of the firm was in the office when the draft was presented. The book-keeper of the firm requested that the draft might be left for a short time, but this request was declined, in accordance with the established usage of this bank.

About three o'clock of the same day, the bank asked Bowdre Bros. & Co., over the telephone, what they intended to do about the draft. W. T. Bowdre replied that the money was in his office to meet the draft, and he would pay it when presented. The bank then turned the draft over to a Notary, who presented it at the office of Bowdre Bros. & Co., and received payment in full, returning with the money to the bank. It further appears that, soon after the draft was handed the Notary by the bank for collection, and after Bowdre Bros. & Co. had notified the bank, over the telephone, of their readiness to pay the draft on presentation, the corresponding clerk of the Continental National Bank addressed a postal-card to the First National Bank, of Florence, Ala., stating that "Bowdre was in the hands of a Notary." This postal-card, it reasonably appears from the record, was not mailed until six o'clock that evening. In the meantime, and about five o'clock, the money had been paid into the bank by the Notary. It thus appears that Bowdre Bros. & Co. were not protested for the non-payment of this draft, nor was said firm in the hands of a Notary for protest, but, on the contrary, it must have been understood that the draft would be paid on presentation. The evidence is indisputable that, at the time the postal-card was mailed, stating that Bowdre was in the hands of a Notary, the draft had been paid, and its proceeds were in the vaults of the Continental National Bank.

There was proof on the trial below tending to show that a report became prevalent among the merchants of Memphis, having its origin in the publication of the postal-card, that the Continental National Bank had protested the Bowdres, and that said firm had become involved. There was also proof tending to show that the commercial agencies subjected the Bowdres to an investigation. It is shown, also, that the rumor reached the customers of Bowdre Bros., and, in one instance, caused a withdrawal of large deposits. The trial resulted in a verdict and judgment against the bank for the sum of twenty thousand dollars, but in favor of C. F. M. Niles, cashier. Motions for a new trial and in arrest of judgment having been overruled, the bank appealed, and has assigned errors.

The first assignment of error arises upon the charge of the Court with respect to the pleadings. The declaration avers that "plaintiffs are merchants and traders in the city of Memphis, and in the exercise of that calling on the sixteenth of October, 1890, in which calling a good financial credit and standing is, and was, on said day, and at all times, of great importance and value to them, and that, on said sixteenth of October, 1890, the defendants, wickedly intending to injure the plaintiffs, did maliciously compose and publish of, and concerning the plaintiffs, a certain false, scandalous, and defamatory libel; that is to say, it, through its officers, wrote and directed a certain United States

postal-card, on said October 16, 1890, and addressed the same to the First National Bank at Florence, in the State of Alabama, and deposited the same in the United States post-office at Memphis, Tenn., with legal postage prepaid, as follows:

"'CONTINENTAL BANK, MEMPHIS, TENN.,
"'October, 16, 1890.

"'Yours of —— received ——. We credit ——. Bowdre in hands of Notary ——. Entered for collection.                    Respectfully,
"'C. F. M. NILES, *Cashier.*'

"Meaning thereby that the plaintiffs had suffered their financial credit and standing as merchants to become dishonored by a protest for non-payment of their commercial paper at the hands of a Notary, which said postal-card was carried through the United States mail, and, by due course, was received by said First National Bank of Florence, and, by it, was publicly shown and exhibited to divers persons then and there, by means whereof the plaintiffs have been brought into public scandal and commercial disgrace, and greatly injured in their good name and otherwise injured, to their damage fifty thousand dollars," etc.

To this declaration the defendants pleaded the general issue. In this state of the pleadings the Circuit Judge opened his charge to the jury, viz.:

"The defendants, the Continental Bank and C. F. M. Niles, had the right to make any legitimate pleading that would defeat this suit. They did

plead not guilty. They could have pleaded further if they has so desired, viz.:

"*First.*—Justification generally; that is, that the language written on the postal-card, and the meaning or innuendo as set out in the declaration, was true.

"*Second.*—They might have pleaded specially; that is, that the language written on the postal-card was true, and would have been compelled to prove it; and they might also have pleaded that the innuendo or meaning attributed to the language written on the postal-card, as set out in the declaration, was not a legitimate construction of such language. If either of the foregoing pleas had been interposed and established, it would have defeated this action.

"*Third.*—Defendants might have pleaded the general issue, and under it insist that the communication, in the language written on the postal-card, was one which, in law, he had a right to make, and therefore it was privileged, or that he or it was protected in making it."

The first assignment of error is that the Circuit Judge erred in charging the jury as follows:

"If the last method of pleading—viz., the general issue—is adopted, defendant thereby admits that the language used on the postal-card is *not true*. In this case the Court has to tell you that the course of pleading, as set out in the third item—viz., the plea of the general issue—is the one adopted by these defendants, and under it they

admit that the language used in the postal-card is *not true."*

It is insisted that this charge is erroneous. It is admitted by counsel that in actions for libelous publications imputing crime or moral turpitude, and perhaps in cases clearly imputing commercial insolvency, the truth of the publication cannot be given in evidence under the general issue. But counsel insist that this is an action for libel only in respect to special damages to commercial credit, and that the rule invoked by the Court has no application.

In the investigation of this question we will first inquire what is admitted as a matter of pleading under the general issue in an action of libel, and whether there is any difference in the application of the rule when the libelous matter is actionable *per se,* and when it is only actionable upon averment and proof of special damages. The general principle that the defendant in an action of libel or slander cannot, under the general issue, prove the truth of the defamatory matter is well settled in this State. *McCampbell* v. *Thornburg,* 3 Head, 109; *Shirley* v. *Keathy,* 4 Cold., 29; *West* v. *Walker,* 2 Swan, 32; *Hackett* v. *Brown,* 2 Heis., 264.

In *Hackett* v. *Brown* this Court quotes with approval the following language from Section 324, 1 Greenleaf on Evidence, viz.: "It is perfectly well settled that, under the general issue, the defendant cannot be admitted to prove the truth of the words, either in bar of the action or in miti-

gation of damages." The plea of the general issue on an action of oral or written slander operates as a denial of the speaking of the words or the publication of the libel, and a denial also of the damages in cases where the averment of special damages is necessary to maintain the action. Where the defense is that the libel or words were published or spoken, not in the malicious sense imputed by the declaration, but in an innocent sense, or upon an occasion which warranted the publication, this matter may be given in evidence under the general issue. Newell on Defamation, Slander, and Libel, page 648. But it is well settled that, under the plea of the general issue, the defendant cannot be permitted to give in evidence any matters tending to establish the truth of the defamatory matter, either in bar of the action or in mitigation of damages. The truth of the words charged to have been spoken or published is conclusive defense to the action, but, in order to be available, must be relied on by a formal plea of justification. It is insisted, however, on behalf of the bank, that it was precluded from interposing a plea of justification as a defense, for the reason that plaintiff employed an innuendo in the declaration, which ascribed an unwarranted meaning to the words written on the postal, and that defendant could not justify the use of the words without at the same time justifying the meaning set forth in the innuendo.

"The defendant," says Mr. Newell, page 628, "is

in no way embarrassed by the presence of the innuendo in the statement of the claim; in fact, it is to him an advantage. He can either deny that he spoke the words, or he can admit that he spoke them, but deny that they conveyed that meaning. He can also plead that the words were true, either with or without the alleged meaning. It will then be a question for the jury to say from the proofs whether the plaintiff's innuendo is sustained. If not, the plaintiff may fall back upon the words themselves, and urge that, taken in their natural and obvious signification, they are actionable in themselves, without the alleged meaning, and that therefore his unproved innuendo may be rejected as surplusage. The plaintiff, however, will not be allowed, in the midst of the trial, to start a fresh innuendo not in the pleadings. He must abide by the construction put on the words in his statement, or else rely on their natural and obvious import."

It is true Mr. Townsend, in his work on Slander and Libel, states that a justification on the ground of truth must justify in the sense imputed by the innuendo, for the reason that the plea admits the innuendo. Sec. 215. But it is evident the author refers here to a plea that justifies the libel or slander *generally*, and he does not mean to say that there can be no *special* justification under the American practice. It would violate every canon of common sense and good pleading to hold that a defendant cannot justify the speak-

ing of the words or the publication of the libel without at the same time admitting the truth of some far-fetched and extravagant meaning started in the imagination of the pleader or evolved from the morbid brain of his client, and introduced into the declaration in the form of an innuendo.

It was perfectly admissible, we think, under the authorities, for the defendant bank to have pleaded a justification of the words written on the postal, and, in the same plea, to have denied that the words were susceptible of the meaning ascribed to them in the innuendo, and we fail to perceive in what way the defendant was embarrassed or hampered, or precluded from the interposition of the plea of justification by the presence of the innuendo.

Again, it is contended by counsel for the bank that while it may be true that in an action for libelous publications imputing crime or moral turpitude, and perhaps in cases clearly *per se* imputing commercial insolvency, the truth of the publication cannot be given in evidence under the general issue, yet this principle does not apply in cases where the language is only actionable upon averment and proof of special damages. In the opinion of the Court, this position is untenable. A plea of justification, supported by proof of the truth of the charge, is a conclusive defense, whether the words are libelous *per se* or are only actionable upon proof of special damages. The true distinction between the two classes of cases

is not to be found in the contention of counsel
for the bank that when the words are actionable
*per se* the justification of their truth must be
specially pleaded, while in cases which are only
actionable upon averment and proof of special
damages the truth of the words may be shown
under the plea of not guilty; but the marked
feature that distinguishes the two classes of cases
is to be found in the *quantum* of evidence to be
introduced by the plaintiff on the question of
damages. If the words are libelous *per se*, the
plaintiff may recover damages without the neces-
sity of showing by evidence that he has sustained
any pecuniary loss. If, on the other hand, the
words are not actionable in themselves, the plaint-
iff must not only show the publication of the
words, but that it has resulted in special damages
to him. In the former, the plea of not guilty
does not put in issue the question of damages,
because damages are presumed; while in the latter
no damages are recoverable unless averred and
proved. As already stated, this is the distinguish-
ing feature of the two classes of cases, and we
apprehend that if the defendant wishes to avail
himself of the defense that the words are true, a
formal plea of justification is as necessary in the
one case as in the other, and in neither case can
the truth of the words be proved under the gen-
eral issue.

In the case of *Sheehan et al.* v. *Collins*, 20 Illi-
nois, 325, which was an action for libel, it was

urged that the Court below erred in instructing the jury that the defendant, by pleading the general issue, admitted that plaintiff was innocent of the charge. The Supreme Court said: "While this is not the language of the plea, it is undoubtedly the effect of such a plea, citing *Reginer* v. *Cabot*, 2 Gilm. R., 39. That plea denies the act charged in the declaration only, and the truth or falsehood of the charge cannot be inquired into under that issue." Its falsehood stands admitted by the parties. See also Townsend on Slander and Libel, Section 403, where it is stated that the plea of the general issue admits the falsity of the charge.

While we are of opinion the charge of the Circuit Judge, laying down the rule on this subject, was technically correct, we think it is objectionable, and, ordinarily, would have been misleading, in that it omitted to state, in the same connection, that the failure to plead a justification was not an admission of the writing and publication of the words, but that the plea of the general issue was a denial both of the writing and publication. We can see, however, from the record that this omission could not have been prejudicial to the defendant, since the writing and publication were not disputed on the trial.

We next proceed to inquire whether the words laid in the declaration are libelous *per se*, or are actionable only upon averment and proof of special damages.

Mr. Newell, in his work on Defamation, Slander and Libel, page 181, says, viz.:

"When language is used concerning a person or his affairs, which, from its nature, necessarily must, or presumably will, as its natural and proximate consequence, occasion him pecuniary loss, its publication *prima facie* constitutes a cause of action, and *prima facie* constitutes a wrong, without any allegation or evidence of damage other than that which is implied or presumed from the fact of publication, and this is all that is meant by the terms actionable *per se*. Therefore, the real practical test by which to determine whether special damage must be alleged and proven in order to make out a cause of action for defamation, is whether the language is such as necessarily must, or naturally and presumably will, occasion pecuniary damage to the person of whom it is spoken."

Defamatory words, falsely spoken of a party, which prejudice such party in his profession or trade or business, are actionable in themselves, without proof of special damages.

Of merchants, tradesmen, and others in occupations where credit is essential to successful prosecution, any language is actionable, without proof of special damages, which imputes a want of credit or responsibility, or suggests a charge of insolvency. Newell, Secs. 168–193; Townsend on Libel and Slander, Sec. 191.

Next to imputations which tend to deprive a man of his life or liberty, or to exclude him from

the comforts of society, may be ranked those which affect him in his office, profession, or means of livelihood. Newell on Defamation, Slander and Libel, Sec. 168. "It by no means follows," says the same author, "that all words spoken to the disparagement of an officer, professional man, or trader, will be actionable in themselves. Words, to be actionable on this ground, must touch the party in his office, profession, or trade; that is, they must be shown to have been spoken of him in relation thereto, and to be such as would prejudice him therein." Newell, page 174.

Says Mr. Townsend: "That the language must touch the person whom it concerns in his special character, means only that it must concern him in such special character, and affect him therein." Sec. 190.

The rule is thus stated by Judge Andrews in *Sanderson* v. *Caldwell*, 45 New York, 405 (S. C., 6 Am. Reports), viz.: "There is some confusion in the cases upon the point whether the words used must in terms be applied by the speaker to the office, business, or profession of the person who claims to recover by reason of them, and whether, if not so expressly applied, they can be said to touch him in the special character named. The rule derived from the authorities, and with which most of the cases can be reconciled, seems to be this: When the words spoken have such a relation to the profession or occupation of the plaintiff that they directly tend to injure him in re-

47—8 P

spect to it, or to impair confidence in his character or ability, when, from the nature of the business, great confidence must necessarily be reposed, they are actionable, although not applied by the speaker to the profession or occupation of the plaintiff; but when they convey only a general imputation upon his character equally injurious to any one of whom they might be spoken, they are not actionable, unless such application be made." Tested by these principles, is the language of the postal-card, "Bowdre in the hands of a Notary," libelous *per se*—that is, actionable without averment and proof of special damages?

The argument against such a construction is, that the words used on the postal do not, in their obvious meaning, convey to the mind an imputation of a, protest of Bowdre Bros. & Co.'s commercial paper; that the name of the mercantile firm of Bowdre Bros. & Co. is not mentioned, and that the words, "in the hands of a Notary," do not obviously impute a protest or insolvency, but mean a demand for payment, and a protest if payment is refused. The position assumed by counsel for plaintiff in error is that the words are ambiguous in their meaning, and do not in their obvious sense necessarily impute a protest, and are also ambiguous in their application, and are not libelous on the plaintiffs *per se* without extraneous facts, explanation, or innuendo. We do not think the character of the libel is changed by the fact that an innuendo showing the meaning and application

of the words, is employed in the declaration. The full name of the party need not appear in the libel. All that is necessary is that the words must refer to some ascertained or ascertainable person, and that person must be the plaintiff. Newell, page 256–7. "Whether a man is called by one name or whether he is called by another, * * * if those who look on know well who is aimed at, the very same injury is inflicted, the very same thing is, in fact, done as would be done if his name and Christian name were ten times repeated." Odgers, on Libel and Slander, 130.

If the words spoken or written, though plain in themselves, apply equally well to more persons than one, evidence may be given both of the cause and occasion of publication, and of all the surrounding circumstances affecting the relation between the parties, or of any statement or declaration made by the defendant as to the person referred to. Newell, Section 259.

"Nor is the character of the libel affected by the fact that its full meaning is set forth in an innuendo. The office of the innuendo is to aver the meaning of the language published. Therefore, if the meaning of the language is plain, no innuendo is needed. The use of it can never change the import of the words, nor add to nor enlarge their sense. If the common understanding of men takes hold of the published words, and at once applies without difficulty or doubt a libelous meaning thereto, an innuendo is not needed, and would

be but useless surplusage in pleading." Newell, Section 619.

Again, it is a familiar rule that words are to be understood in their ordinary signification unless reason appears for assigning a different sense. Says Mr. Newell: "The Courts no longer strain to find an innocent meaning for words *prima facie* defamatory, neither will they place a forced construction on words which may fairly be deemed harmless. The rule which once prevailed, that words are to be understood in *mitiori sensu*, has been long ago superseded, and words are now to be construed by Courts as they always should have been—in the plain and popular sense in which the rest of the world naturally understood them. In all cases of ambiguity it is purely a question for the jury to decide what meaning the words would convey to persons of ordinary intelligence." Newell, page 304; *Watson* v. *Nichols*, 6 Hum., 174.

Where the language published is unambiguous, it is the exclusive province of the Court to determine its construction, and to determine whether or not upon its face it is actionable *per se*, etc. Townsend on Libel and Slander, Section 286; *Banner Publishing Co.* v. *State*, 16 Lea, 179. But on a plea of not guilty, whether the defamatory matter was published concerning any particular individual, or whether that individual was intended, is a question of fact for the jury. *Id.*

This Court is of opinion that the words, "Bowdre in the hands of a Notary," found by the jury

to have been written of and concerning the mercantile firm of Bowdre Bros. & Co., were libelous *per se*. We think these words would be universally understood by merchants and business men to mean that some commercial paper for which Bowdre Bros. & Co. were primarily bound had not been paid during business hours, and had gone into the hands of a Notary for protest. The obvious meaning of the words is that Bowdre's own paper was in the hands of a Notary—not that paper drawn on him had been placed in the hands of a Notary. It is admitted that the non-payment of an unaccepted draft by the drawees, and a protest for such non-payment, does not dishonor the drawee; but the objectionable words used in this postal contains no such explanation. The language employed convey the idea that there had been a failure on the part of Bowdre Bros. & Co. to meet, within business hours, some mercantile paper for which they were primarily bound, and that it had become necessary to place the same in the hands of a Notary for protest. Such language contains a clear imputation that touched the credit, standing, and solvency of a mercantile firm, and the language is actionable *per se*. "To say or publish of a merchant any thing that imputes insolvency, inability to pay his debts, want of integrity in his business, or personal incapacity or pecuniary inability to conduct it with success, is slanderous or libelous *per se*, if without justification, and general damages may be recovered." 57 Md. Rep., 38.

Bank *v.* Bowdre Bros.

The nineteenth assignment of error is that the Circuit Court erred in not granting a new trial on the ground that the verdict is excessive. This Court is satisfied, upon a careful examination of the record, that this assignment should be sustained. We are of opinion, in view of the facts disclosed by this record, that the damages assessed (twenty thousand dollars) are so excessive and extravagant as to indicate passion and prejudice on the part of the jury.

As the case must be retried, we refrain from reviewing the case further than to say that we find many facts and circumstances in proof which, in our opinion, should have mitigated the damages assessed by the jury.

Reversed.