BOWKER *v.* BRY-BLOCK MERCANTILE Co. *et al.*

(*Jackson,* April Term, 1916.)

LIBEL AND SLANDER. Words imputing larceny.

In slander action it was error to direct a verdict for defendant on the ground he had not imputed larceny to plaintiff, where he roughly said to plaintiff, a customer in his store, in the presence of others, that a hat was stolen from the store, that the hat on her head looked very much like it and was the hat, that he had been trying to locate the hat for some time by detectives, and they had located it on her head, and she replied that she had never been accused of stealing before, and no denial of the meaning of his words as defined by this reply was made by him.

Case cited and approved: Cheatham v. Patterson, 125 Tenn., 437.

Cases cited and distinguished: Fields v. State, 46 Tenn., 526; Hughes v. State, 27 Tenn., 76; Bank v. Boudre, 92 Tenn., 740; Ouslow v. Horne, 3 Wils., 177.

---

FROM SHELBY.

---

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—H. W. LAUGHLIN, Judge.

HUNTER & WILSON and BANKS, BOALS & HARRELSON, for plaintiff.

HIRSH & GOODMAN, for defendants.

Mr. Special Justice Gholson delivered the opinion of the Court.

This is a suit for slander brought by the plaintiff, Mrs. W. F. Bowker, against the Bry-Block Mercantile Company, a corporation, and I. D. Block, who was its vice president, in the circuit court of Shelby county. At the conclusion of the testimony of the plaintiff a motion for a directed verdict was sustained by the circuit judge, from which an appeal was prayed and granted to the court of civil appeals. That court reversed and remanded the case, and it is now here upon petition for *certiorari* on the part of the defendants below.

The testimony shows that the plaintiff, Mrs. Bowker, who lives in Memphis, and who had been personally acquainted with the defendant I. D. Block for several years (two of her children having worked in the store of the defendant company), on Saturday afternoon, June 27, 1914, went into the store of said company and was seated upon a stool and being waited upon at the counter of the pattern department; that the defendant corporation conducted a large department store, with several hundred employees; that the defendant I. D. Block approached Mrs. Bowker and roughly touched her on the shoulder and said he wanted to see her a moment. He took her two or three steps over in the main aisle of the store, and in the presence and hearing of two men said to her:

"A hat was stolen from this store some time ago, and the hat you have on your head looks very much

like the hat, and is the hat. These men are my detectives. I have had them trying to locate the hat for some time, and they have located it on your head, and that is the hat.''

Mrs. Bowker then said to Mr. Block that she had never been accused of stealing before. Thereupon Mr. Block told her to go on and finish her shopping, and Mrs. Bowker stated that she had some change coming to her from the saleslady at the pattern counter which she would get and never do any more shopping in his store. Mr. Block then asked her where she got the hat she had on. She replied that she had purchased it at that store and paid $9.98 therefor. He asked from whom she purchased it, and if she could identify the clerk, to which she replied that she had purchased it several months before from a lady clerk, but she could not identify her, as she did not know her.

When this conversation took place a large number of people were in the store, some of whom were within two or three feet of Mr. Block, Mrs. Bowker, and the two detectives, and within hearing distance of what was said.

Immediately after this conversation Mrs. Bowker went back to the pattern counter, got her change, and one of the detectives in whose presence I. D. Block had made the statement set out above came and asked for her name and address, said he assumed that she wanted to wear the hat home, as the next day was Sunday, and that he would be down Monday morning for it, to which she replied: ''All right and I will show you the best

time you ever had.'' The detective did go to her house on Monday and Tuesday for the hat, but she was not at home, and on Wednesday he went again to her house, saw her and demanded the hat, which she declined to give him, and referred him to her lawyer.

The declaration of the plaintiff below contained three counts and set out the words spoken by I. D. Block to her, quoted above. It also contained an *innuendo* that the defendants by the words quoted in the testimony of Mrs. Bowker imputed to her the crime of larceny. The defendants pleaded not guilty.

It was conceded by the parties that, if the meaning of the words used by I. D. Block imputed to the plaintiff the crime of larceny, they would be slanderous *per se*, and that it would have been error to peremptorily instruct for the defendants. Plaintiff contends that the words meant to impute said crime, or at least that this was a question for the jury. The defendants contend that the words did not impute to her the crime of larceny; furthermore, that the words are not ambiguous, either on their face or by reason of extraneous facts, and hence that the meaning of the words should not have been submitted to the jury.

''Larceny'' (as defined in this State in the cases of *Fields* v. *State*, 6 Cold., 526, and *Hughes* v. *State*, 8 Humph., 76) ''is the felonious taking and carrying away the personal goods of another. . . . Possession of the fruits of crime recently after its commission is *prima facie* evidence of guilty possession, and if unexplained, either by direct evidence or by the at-

tending circumstances, or by the character and habits
of life of the possessor, or otherwise, it is taken as con-
clusive.''

''Words are now to be construed by courts .. .. ..
in the plain and popular sense in which the rest of the
world naturally understood them.  In  all   cases   of
ambiguity it is purely a question for the jury to de-
cide what meaning the words would convey to persons
of ordinary intelligence.''  *Bank* v. *Bowdre,* 92 Tenn.,
740, 23 S. W., 131, and authorities there cited.

Where the language published is unambiguous, it
is the exclusive province of the court to determine its
construction, and to determine whether or not upon its
face it is actionable *per se.* . *Bank* v. *Bowdre,* supra.

''The question always is:  How did the persons to
whom the words were originally spoken or published
understand them?—the legal presumption being that
they were persons of ordinary intelligence.  We must
assume too, that they give to ordinary words their or-
dinary meaning; to local or technical phrases their lo-
cal or technical meaning.  That being done, what did
the whole passage convey to the unbiased mind?''
Newell's Slander & Libel (3d Ed.), section 367.

In the opinion of Judge Lansden in the well-consid-
ered case of *Cheatham* v. *Patterson,* 125 Tenn., 437,
145 S. W., 159, Ann. Cas., 1913C, 314, there is quoted
with approval the following language of Chief Justice
De Gray in *Onslow* v. *Horne,* 3 Wils., 177:

''The rule is that the words must contain an express
imputation of some crime liable to punishment, some

capital offense, or other infamous crime  or  misde-
meanor, and the charge upon the person spoken of must
be precise.''

Now, applying the rules under the authorities above
referred to, what was the meaning of the language used
by Block to Mrs. Bowker?

The statement was made by Block that a hat had
been stolen from the store of defendant company; that
the hat which she (Mrs. Bowker) had on looked like the
stolen hat, and was the hat; that the detectives whom
he -had employed for some time had been trying to
locate the hat, and had located it on her head.

Can there be- any doubt but that Block in precise
and exact terms charged that the crime of larceny of
the hat had been committed, and that the property
found in the possession and upon the person of Mrs.
Bowker was the same that had been stolen from said
store? Did he not in this charge make  out  a *prima
facie* case of larceny by Mrs. Bowker in having in her
possession stolen property? Did not those who heard
this charge understand the language used by him in
speaking to her to mean that he charged her with the
larceny of the hat?

The detectives employed by Block are shown by the
evidence to have heard the conversation. Customers
in the store and employees in all probability heard it.
In the light of the testimony quoted, there is no doubt
as to how Mrs. Bowker understood it, because her re-
ply was that she had never been accused of stealing be-
fore. No denial of his meaning as defined by her was

made by Block. There can be no doubt as to how one of the detectives in whose presence the conversation took place understood this meaning, because he took her name and address and said that he would be at her house on the following Monday to get the hat; and, as stated before, he did go to her residence for the hat on Monday, Tuesday, and Wednesday.

We think the court of civil appeals was clearly right in reversing and remanding the case, and the petition for *certiorari* is denied.