## TIMES PRINTING CO. v. MRS. M. L. MULKEY.

Eastern Section.    March 11, 1926.

No petition for Certiorari was filed.

1. **Libel and slander. It is not necessary to prove the publication was made of and concerning plaintiff when plaintiff is identified.**
   In an action for libel where plaintiff's name was used through mistake in an article intended to be written about another party, held that since plaintiff's name appeared in the article it was not necessary to prove that publication was made of and concerning plaintiff.

2. **Libel and slander. In a statement where person is charged with a commission of a crime it is no defense that defendant did not intend to refer to plaintiff.**
   In an action to recover for libel where plaintiff's name was printed and charged with the commission of a crime, held that it is immaterial and no defense that the defendant had no intention to refer to the plaintiff.

3. **Libel and slander. When the article is unambiguous it is the province of the court to interpret it.**

In an action for libel held that there was no ambiguity in the article complained of and that when the article is unambiguous it is the province of the Court to interpret it, giving the context its natural and accepted meaning.

4. **Libel and slander. The law implies malice from the fact of publicaiton.**

When libellous matter is printed by authority and ratified by the defendant, the law implies malice from the fact of publication.

5. **Libel and slander. Publication absolving one of crime held libellous.**

In an action for libel where a newspaper printed an apology to a person who was implicated in a crime and through mistake inserted the name of a person who was in no way connected with the matter held that the publication was libellous per se although it was in the nature of an apology.

6. **Libel and slander. Damages.**

In an action for libel where a newspaper printed an apology to a person charged with the commission of a crime and through mistake used the plaintiff's name held that $1000.00 damages was excessive and a remittur of $750.00 was made.

Appeal in Error from Circuit Court, Hamilton County; Hon. Oscar Yarnell, Judge.

Remittitur suggested and affirmed.

Brown & Spurlock, of Chattanooga, for plaintiff in error.

P. H. Thach, of Chattanooga, for defendant in error.

PORTRUM, J. This action was instituted in the circuit court of Hamilton county by Mrs. M. L. Mulkey, and is grounded upon the publication made in the Chattanooga Times, property of the plaintiff in error, defendant below. The plaintiff alleged that the publication was libellous and reads as follows:

"**Mrs. M. L. Mulkey Cleared by Court.**

"Mrs. M. L. Mulkey asks the Times to correct an error which unfortunately crept into yesterday's account of Tuesday's business in the Federal Court involving her. She was indicted jointly with Lela Dozier, colored, in connection with the charge of raising and passing paper money. Mrs. Mulkey was dismissed, there being no evidence to show that she was concerned in the charge, and the Dozier woman was sentenced to a year and a day in an institution for colored women.

"The facts, as given in the Times last night by attorney S. B. Strang were that the raised bills were found on the person of the Dozier woman and in her home. The officers found no such money in the home of Mrs. Mulkey where the colored woman was employed as a servant. Nothing appeared in the evidence to show that Mrs. Mulkey had anything to do with the acts of the servant or that any evidence of the offence was found in her (Mrs. Mulkey's) home."

Mrs. M. L. Mulkey was not in fact the lady referred to in the article appearing in the Times of the day before, that person being a Mrs. Lucy Mulkey, but in the article her name was stated as Mrs. ———— Mulkey. This was a case of mistaken identity and Mrs. M. L. Mulkey was introduced for the first time in the article above quoted. She insists that the article was defamatory in character and libellous per se. The article appearing on the 7th day of January, 1925, and the one attempted to be corrected by the above quoted article reads as follows:

"Federal Court Proceedings.

"Lela Dozier, colored, was sentenced to serve a year and a day in Atlanta but final judgment was reserved until later, when she submitted to an indictment charging possession and attempting to circulate counterfeit money. On August 31, 1920, according to the information, Lela attempted to pass a $1 bill raised to a $10 at a store operated by A. B. Cottrell. She came into the store and said she wanted to pay $2 on her account, according to Mr. Cottrell, and handed him what was supposed to be a $10 bill; he returned her $8 in change. However, when he came to put the money into the cash register he noticed that it was bad and that it had been raised form a '$1' into a '$10.'

"The colored woman said at the time of her arrest that she had received the bad $10 in some change for $20 which she tendered in payment for some merchandise at the butcher shop on East Ninth Street. She said that she got another bill from Mrs. Mulkey, her employer, 911 Blackford Street, so that she could attend her grandmother's funeral in Rome, Georgia. Police raided the Mulkey home, found three of the counterfeit bills and placed Mrs. Mulkey under arrest. Mrs. Mulkey's case was not disposed of yesterday, she having entered a plea of not guilty."

Mrs. M. L. Mulkey's husband, upon the appearance of the first quoted article in the Times on January 8, called upon the editor in company with a Mr. Whitaker, whom the editor believed to be the attorney of the husband, and they made known to the editor the fact of the mistaken identity in the article of January 8th and requested an apology, to be published in a prominent position in the next issue of the paper. The editor readily agreed to make the apology and wrote an article for publication. He also accepted for publication an article written by Mr. S. Bartow Strang, both articles appearing in the next issue of the paper, the one written by the editor, Mr. Ochs, reading:

"Injustice Done Mrs. M. L. Mulkey.

"Through an unfortunate mix-up, the name of Mrs. M. L. Mulkey, wife of a well-known attorney, was used in connection with the story in Thursday's Times in regard to a case in the Federal Court this week in which court Mrs. Lucy Mulkey was acquitted of raising and passing currency. In an effort to correct the error, another was made in which the name of attorney Bartow Strang was used. Mrs. M. L. Mulkey was in no way involved in the case, and the Times greatly regrets any embarassment caused her by the unfortunate mistake. Neither did attorney Strang have any connection with the matter."

Mr. Strang's article reads:

"To the Chattanooga Times:—

"In Thursday's issue of the Times appeared an article headed: 'Mrs. M. L. Mulkey Cleared by Court.' In the second paragraph thereof you stated 'The facts as given the Times last night by attorney S. Bartow Strang are, etc.,'

"I wish to state that I had no connection with the case referred to, know absolutely nothing about it, and did not give your representative or anyone else any information concerning it.

"I do not know Mrs. M. L. Mulkey, but I do know her husband, who is a member of the Chattanooga Bar of high standing, and is a gentleman for whom I entertain respect and the kindest feelings. I understand that his wife enjoys also the respect, esteem and high regard of all who know her.

"You will kindly publish this communication out of justice to Mr. and Mrs. Mulkey and to me, giving this communication the same prominence as the article published on Thursday.

"Yours very truly,

"S Bartow Strang."

The reporter, who wrote the article complained of, states that he received a telephonic communication from a person whom he believed was Mr. Bartow Strang calling attention to the error made in the first published article and asking a correction, and in attempting to make the correction the name of Mrs. M. L. Mulkey was used, it having been given the reporter by the person communicating with him. It is admitted that Mr. Strang was not the person communicating with the reporter. He is an attorney of prominence and was well-known to the reporter and the person communicating with him was believed to be Mr. Strang. Acting upon this information which the reporter believed to be reliable, the publication bearing Mrs. M. L. Mulkey's name was written and published.

The declaration is based solely upon the publication of January 7th. The defendant plead not guilty and the case went to trial and a verdict was rendered in favor of the plaintiff below for the sum of $1000. Defendant filed a motion for a new trial which was overruled and it has appealed to this court and assigned error.

I.

"The court erred in overruling the motion of the defendant for a directed verdict at the conclusion of the whole evidence because the publication was not made 'of and concerning' the defendant in error as alleged in the declaration."

The article was intended to refer to Mrs. Lucy Mulkey but in fact used the name of Mrs. M. L. Mulkey and of course referred to her.

> "If, from a perusal of the defamatory words the person intended to be defamed cannot be ascertained, the words must be substantially averred to have been published of and concerning plaintiff. When the communication is clear and unambiguous except that it does not refer in express terms to plaintiff, it is sufficient to allege in general terms that it was published of and concerning plaintiff." **Libel and Slander, 37 C. J., sec. 348, page 31.**

If the statutory declaration is used and plaintiff did use it, it then contains the averment, but if a common law declaration is used, then the phrase is necessary only when the plaintiff is not identified in the article or the charge made does not of itself refer to plaintiff. It follows that it is only necessary to prove the publication was made of and concerning plaintiff when plaintiff is not identified. The satirical writings of Swift was a libel of all British officialdom, in the opinion of the officials, though none were named, because his satire was of and concerning them; and a person may be libelled by laudation for Brutus was an honorable man.

A statement that a named person is charged with the commission of the crime is a statement of and concerning that person and the liability of defendant depends upon whether the defamation was calculated from its intrinsic quality to lead persons to believe that it referred to plaintiff, and it is immaterial that the defendant had no intention to refer to the plaintiff.

> "The reason is plain. A libel is harmful on its face. If a man sees fit to publish manifestly harmful statements concerning an individual, without other justification than exists for an advertisement or a piece of news, the usual principles of tort will make him liable if the statements are false or are true only of someone else." **Peck v. Tribune Company, 214, U. S., 185; 53 L. Ed., 960.**

> "It has nowhere been decided, as yet, that where either an individual or public newspaper, intended to refer to B, making

a slanderous attack upon A, it is a privileged communication. The plea of typographical error does not in any respect alter the situation. It may go to the question of exemplary damages; but, to the right of the plaintiff to recover, typographical errors form no answer." **McLean v. N. Y. Press Co., 64 Hump., 639, 19 N. Y. Supp., 262.**

"But his (defendant's) claim is that the article was published of the prisoner, Edward E. Palmer, and that of him the libellous portion of the article was true. In a sense this is correct. The article was published of that Palmer, the prisoner, but it does not follow that it may not reflect upon others. If it contained a libel on Edward E. Palmer because of the charge of his vagrancy and arrest, when the article changed the identity of the plaintiff and Edward E. Palmer, there was then a libel on the former. If it is affirmed that A and B are the same person, and that B has committed an offence, it is thereby necessarily affirmed that A has committed the offence. If A and B are in fact different persons, and the charge made is false as to both, then there is a libel on each; if false as to either, then there is a libel on the one who is innocent." **Palmer v. Bennett, 31 N. Y. Supp., 567.**

The case of Hausen v. Globe Newspaper Co., 159 Mass., 293, is relied upon by the defendant as a case in point, but it is recognized that the case as an authority is greatly weakened by an able and exhaustive dissenting opinion, rendered by Mr. Justice Holmes, who is now a justice of the Supreme Court of the United States; his opinion was concurred in by two of his associate justices. The majority opinion is in point but it is out of line with the great weight of American authority and its persuasve qualities have, we believe, been destroyed by the able dissenting opinion of Justice Holmes. It seems to us to be interesting only because of the large amount of investigation required of the public in order to protect the defamed person. Had the newspaper article been read only by the persons present in the court room in that case, and in this case, where the occurrence reported arose, then the reasoning in that case would have been convincing. The case of State v. Brownlow, 7 Humph., 63, is not in conflict with the above indicated conclusions. We are of the opinion there is no merit in the first assignment of error and the same is overruled. The next assignment will be treated as subdivided but the order will be reversed and the last subdivision or "D" will be dealt with first.

## II.

"(D) The court erred also in charging the jury as follows:

" 'Now defendant insists that it did not publish this article of and concerning this plaintiff; that they did not know the

plaintiff and had no malice towards her, and in any event had no malice towards her, that they did not know her. If you conclude that there was no actual malice, still that would not absolve the defendant from liability if the words were actually published, and she would be entitled to recover whatever damages she has actually sustained.'

"This was error, among other reasons, because under this charge the plaintiff in error would be liable if the article was actually published whether it was published of and concerning the plaintiff or someone else. In other words the court never submitted to the jury the question as to whether the article was published of and concerning the plaintiff."

The criticism of the first sentence in the excerpt of the charge has been disposed of under the first assignment of error. But in this assignment it is insisted the court erred because he did not submit to the jury the question of whether the defamatory portion of the publication was "of and concerning" the plaintiff. When the article is unambiguous it is the province of the court to interpret it, giving the context its natural and accepted meaning. There is no ambiguity in the article complained of. Bowke v. Bry-Block Mercantile Co., 135 Tenn., 478. Banner v. State, 16 Lea, 178.

There can be no justifiable criticism of the last portion of the excerpt of the charge, quoted, because the law implies malice from the fact of publication, when made by authority or ratified by the defendant. Rush Stair v. Journal & Tribune Co., 136 Tenn., 404. The assignment is overruled.

### III.

"(C) The court erred in charging the jury as follows:

"'The court instructs you that to publish of a person that they had been indicted for a crime which is untrue, is a libel. It is libellous per se. Such publication is libellous per se and of itself, and if this is untrue, then the law would presume that the plaintiff had been damaged thereby.' This is erroneous because the whole article, including the head lines, when construed together, as it must be, showed that the article on its face was intended to, and did exculpate the plaintiff from any wrong-doing and was not intended to and did not libel her."

The article is not ambiguous and it was the duty of the court to construe it and tell the jury if it was libellous, and if libellous per se. He did this. If not libellous he should have taken the case from the jury. The defendant complains, because, in its judgment, the article is not libellous; the question is made by indirection and could have been made directly under the motion for a directed verdict.

It is insisted the article containing the defamation also exculpates the plaintiff. The argument appeals to one forcibly, but still there remains a strain. An illustrious man entertained so high an opinion of womanhood, he said, "a lady's name should appear in the public print but twice in life, once at her marriage and again at her death." And Caesar demanded that his wife be above suspicion. These standards fit in oddly in this day of equal rights, and the emancipated woman.

There is another consideration we cannot ignore. There are some people of respectability, who entertain so low an opinion of the administration of justice that they are surprised only when the well-to-do are indicted, and believe an acquittal of one of this class is but another evidence of the failure of justice brought about by technical intrigue.

Then has the plaintiff been libelled by the charge that she was indicted even though the article was an apology?

"To traduce one's private reputation—to invade the enjoyment of this reputation—is, of course, a breach of the legal duty one owes to another, and is a tort for which an action will lie. If such a wrong be committed by written words, upon publication of such writing an action for libel at once accrues to the party injured." **Harris v. Trust Co., 128 Tenn., 577.**

"Words, which upon their face, and without the aid of intrinsic proof, are injurious, are libellous per se; but if their injurious character appear, not from their face, in their usual and natural significance, but only in consequence of extrinsic circumstances, they are not libellous per se." **Fry v. McCord Brothers, 95 Tenn., 678.**

We find no error in the action of the lower court in construing the article as technically libellous per se.

## IV.

"(A) (B) The verdict is excessive, being much in excess of any damage the plaintiff sustained and in disregard of the court's instruction; because the verdict evinces passion, prejudice and caprice on the part of the jury."

It is appropriate to preface the consideration of the question raised here with the following:

"But, 'the courts', says Chancellor Kent, 'having found it embarassing to preserve in just harmony and proportion the protection due to character, and the protection which ought to be afforded to the liberty of the press.' 1 Kent., 363." **Saunders v. Baxter, 6 Heisk., 381.**

The court has exercised the power since ancient times of considering the excessiveness of verdicts in like cases. Lord Mansfield says the court has the power of taking the opinion of another jury in any case where the damages were excessive; but all these

questions depend on their own circumstances, on which the court would exercise its discretion, and to libel and slander suits the rule is peculiarly applicable. Saunders v. Baxter, supra.

"But we hold that there are certain cardinal rules upon this subject which the court and jury must not lose sight of. While it is true that the citizen cannot be compensated in money for the injury done to his family by an atrocious libel or slander, yet the gist of the action is the malice, the temper and disposition with which the publication is made. The guilt, says Chancellor Kent, and the essential grounds for action for defamation consists in the malicious intention and when the mind is not at fault no persecution can be sustained. 1 Kent, 634.

"But there are two kinds of malice, one or both of which may exist in every libellous publication. These are actual malice or personal ill-will to the party defamed, which may be shown to exist at the time of the publication; and malice in law, which is presumed from every publication which is libellous upon its face. . . . The damages should be assessed therefore with reference to this distinction. The reckless incaution on the part of the publisher is punishable in damages according to the circumstances attending it, and the injury likely to result to the plaintiff. . . . But the existence of actual malice against the party injured may be considered in aggravation of damages as its non-existence may be weighed by the jury in mitigation thereof; and these considerations should be impressed upon the minds of the jury in all actions of this character. Upon this subject we may safely repose upon the doctrine of the Supreme Court of the United States already cited, that the damages assessed should depend upon the circumstances showing the degree of moral turpitude or atrocity of the defendant's conduct." **Saunders v. Baxter, supra.**

"There is no fixed measure of damages applicable to actions for defamation. A verdict is open for inspection and revision by the court for the purpose of determining whether the jury was guided by sound discretion in fixing the damages." **Libel and Slander, 37 C. J., 128.**

The courts have reduced judgments, for defamation, of $1000 and $500, when from the circumstances they were deemed excessive. It remains for us to test the reasonableness of the amount of this judgment in view of the facts and circumstances. There is no material issue of fact. It is true plaintiff argues the jury was justified in inferring negligence on the part of the defendant in not making inquiry and verifying the statements made to its

editor over the telephone, by the party supposed to be Mr. Strang, but we do not believe the jury warranted in imputing negligence under these circumstances. A person in receipt of a telephonic communication from a person believed to be reliable is not expected to set on foot an independent inquiry to determine the truth of the communication when the facts stated are not such as to require caution.

The trial judge instructed the jury if the publication was made in good faith and for the purpose of correcting an injurious error the damages should be slight. The undisputed proof was that it was made in good faith and as an apology. The amount of the verdict cannot be considered slight under the circumstances and was fixed in disregard of the law as given in charge by the court. The action of a jury in disregarding the instruction given them by the court is evidence of arbitrary conduct and evinces passion and prejudice.

If there were any room for doubt, this court would be inclined to approve this verdict as it stands, but the publication was made as an apology with the intent and purpose of exculpation. When read as a whole the ordinary person would conclude the lady had been wrongfully involved by an ignorant negro cook. To say that one is cleared of an indictment, dams one only in the mind of the cynical, especially when that one is a lady of inestimable character. A correction was requested and promptly made. We are unable to find a sound basis for the assessment of $1000 as damages, the amount partakes of a punitive award, and exemplary damages are not justified when the publication is made in good faith and without malice.

But the plaintiff was entitled to a judgment of record as a vindication, she therefore suffered some actual damages; we believe a judgment of $250 is commensurate with the wrong inflicted, and a remittitur is suggested reducing the judgment to this sum, and if accepted, the case is affirmed at plaintiff in error's cost; if not accepted the case is reversed and remanded for a new trial.

Snodgrass and Thompson, JJ., concur.